387 So.2d 26 (1980)
Robert O. HAWTHORNE, Jr.
v.
SOUTHEASTERN FIDELITY INSURANCE CO. et al. and State Farm Mutual Automobile Insurance Co.
No. 7673.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1980.
*28 Gist, Methvin, Hughes & Munsterman, DeWitt T. Methvin, Jr., Alexandria, for defendant-third party plaintiff-appellant.
McLure & McLure, John G. McLure, Alexandria, for defendant-third party appellee.
Provosty, Sadler & deLaunay, William H. deLaunay, Jr., Alexandria, for third party defendant-appellee.
Broussard, Bolton & Halcomb, Daniel E. Broussard, Jr., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
GUIDRY, Judge.
This case arises from a two-car collision wherein the automobile driven by plaintiff, Robert O. Hawthorne, Jr., was rear-ended by a vehicle driven by defendant, Hollis D. Clark, Jr. This appeal is brought by plaintiff's uninsured/underinsured motorist carrier, State Farm Mutual Automobile Insurance Company (State Farm), who was also made a defendant in plaintiff's suit for damages. A jury determined State Farm was obligated to pay the UM policy limits to plaintiff for his damages sustained in the accident as well as penalties and attorney's fees for the arbitrary and capricious refusal by State Farm to timely pay under said policy. We affirm the trial court judgment holding State Farm liable to pay under the UM policy coverage, however, we reverse the award for penalties and attorney's fees as we find the refusal of State Farm to pay under the UM coverage to have been reasonable and not without probable cause.
The accident occurred on February 9, 1978 as plaintiff was stopped behind traffic in the inside westbound lane of the four-lane Fulton Street Bridge located in Alexandria, Louisiana. Plaintiff filed suit on February 6, 1979 against Clark, the latter's insurer, Southeastern Fidelity Insurance *29 Company (Southeastern), and State Farm seeking damages for the injuries and losses allegedly sustained as a result of the accident.
Clark and Southeastern answered with general denials to plaintiff's allegations. State Farm answered on February 28, 1979 denying UM coverage under the policy issued to plaintiff on the ground that the latter had violated the provisions of said policy by failing to timely report the accident so as to prejudice State Farm in the determination of the extent and nature of the loss claimed by plaintiff. Further, State Farm made a third party demand against Clark and Southeastern and also against Wayne Steimal and Alexandria Coca Cola Bottling Company, Ltd. (Coca Cola). Steimal and Coca Cola's connection with the suit arises from State Farm's allegations that through negligence a dolly or handtruck had fallen onto the traveled portion of the road in the vicinity of the accident from a Coca Cola truck being driven in the eastbound lane by Steimal and that the fallen dolly had caused traffic to come to an abrupt stop in plaintiff's lane when a driver of a car, stopped ahead of plaintiff, exited his vehicle to place the dolly on a raised median out of the way of traffic. State Farm contended that the alleged negligent acts of Steimal and Coca Cola were causes in fact of the accident for which Steimal and Coca Cola should be held liable, along with Clark and Southeastern, to indemnify State Farm in the event the latter had to pay under its policy with plaintiff.
On August 17, 1979 plaintiff filed an amended and supplemental petition alleging additional injuries and, further, by alleging the arbitrary and capricious refusal of State Farm to pay the limits of the UM coverage, plaintiff sought penalties and attorney's fees under the provisions of LSA-R.S. 22:658.
On October 15, 1979 Clark and Southeastern filed an exception of no cause of action to State Farm's third party demand. The stated basis for this exception, as to Southeastern, was that in order for State Farm to be cast in judgment under its UM provisions the policy limits of liability of any policy issued by Southeastern would have to have been exhausted and that there would not be any remaining contractual liability through insurance coverage on the part of Southeastern which could be used as the basis for a judgment in favor of State Farm. As to Clark, the basis of his exception was that the claim of State Farm for reimbursement by way of subrogation was precluded under the provisions of the statutory law pertaining to UM coverage set forth in LSA-R.S. 22:1406(D) as most recently interpreted in the case of Niemann v. Travelers Ins. Co., 368 So.2d 1003 (La. 1979).
Coca Cola filed an exception of no right or cause of action on October 16, 1979. Coca Cola urged as the basis for this objection that State Farm was without subrogation rights and, further, that considering the fact that plaintiff had not sued Coca Cola within a year of the accident, any claim against Coca Cola arising from the accident in question had prescribed. On October 23, 1979 Coca Cola and Steimal filed a joint exception of prescription as to State Farm's third party demand. All exceptions were referred to the merits.
The matter was tried before a jury starting on October 25,1979 and ending on October 30, 1979. During the trial, on October 26, 1979, a partial judgment dismissing Clark and Southeastern was rendered after a compromise and settlement agreement for Southeastern's policy limits was entered into with plaintiff, the latter reserving all rights against State Farm. Before giving the case to the jury, upon motion of plaintiff, the trial judge directed a verdict in favor of plaintiff and against State Farm finding Clark's negligence to be the sole cause of the accident. The trial court further, upon motion of the third party defendants, directed a verdict dismissing State Farm's third party demand as to all third party defendants. The jury then rendered a verdict by special interrogatories on the remaining issues in favor of plaintiff and against State Farm. State Farm was cast in judgment for the policy limits, $50,000.00, *30 subject to a credit of $318.09 previously paid to plaintiff by State Farm and $5,000.00 previously paid to plaintiff by Clark and his insurer, Southeastern. State Farm was condemned to pay the statutory penalty of 12% on $44,681.91, the amount due under the policy, and attorney's fees in the sum of $5,000.00, as well as all costs of the proceedings. From this judgment State Farm appeals. Plaintiff answers the appeal seeking an increase in attorney's fees and the disallowance of any credit for previous payments made to plaintiff by State Farm, Clark and Southeastern.
Appellant's specifications of alleged trial court errors fall within the following broad issue areas:
1. Whether the trial judge manifestly erred in his rulings concerning admissibility of evidence and his statements before the jury in connection therewith.
2. Whether the trial judge manifestly erred in directing verdicts in favor of third party defendants, Coca Cola, and Wayne Steimal and plaintiff, Robert O. Hawthorne, Jr.
3. Whether the trial judge erred in giving instructions to the jury.
4. Whether the award in favor of the plaintiff is grossly excessive.
5. Whether the trial court erred in awarding penalties and attorney's fees.

I.
State Farm contends that the trial judge manifestly erred in his rulings and statements before the jury concerning the admissibility of evidence. Appellant specifies five instances, two of which we will address as the other three are clearly without merit.[1]
Plaintiff's petition listed as an element of damage loss of income, past and future. At trial plaintiff introduced his time and leave records for the years 1977, 1978 and 1979. Said records allegedly reflected the number of days of sick leave and annual leave in lieu of sick leave taken by plaintiff which were attributable to the injuries sustained by plaintiff in the accident. On cross-examining plaintiff as to this element of damage, counsel for State Farm attempted to elicit testimony concerning the actual amount received by plaintiff in annual leave and sick leave benefits in addition to plaintiff's annual salary. Counsel for plaintiff timely objected on the grounds that any such benefits came within the collateral source rule. The trial court sustained plaintiff's objection ruling that the collateral source rule is an exclusionary rule of evidence and as such the question or mention of any benefits derived from annual or sick leave or any other source must not be permitted to reach the ears of the jury. Appellant argues that the existence of these employment benefits is admissible evidence which should have been made known to the jury, after which the trial judge in his charge to the jury could have instructed the latter as to the collateral source rule so that they could properly fulfill their function as the judge of the facts as well as the law.
While certainly the jury is required to have all admissible evidence before them and be instructed as to the applicable law *31 involved in order to fairly adjudicate the rights, liabilities, and obligations of the parties in the suit, the determination of the admissibility of evidence is a function solely within the province of the trial court judge. The specific issue on review is whether the trial judge erred in finding the evidence as to the existence of annual and sick leave employment benefits to be inadmissible.
In Hall v. State Department of Highways, 213 So.2d 169, 175 (La.App. 3rd Cir. 1968) we noted the applicability of the collateral source rule as follows:

"While a tortfeasor is entitled to credit for payments made through insurance procured by the tortfeasor himself, Gunter v. Lord, 242 La. 943, 140 So.2d 11 (1962), the plaintiff's tort recovery is not diminished because of payments made through insurance of (sic) other collateral sources independent of the wrongdoer's procuration or contribution, Gunter v. Lord at 140 So.2d 16; American Indemnity Co. v. New York Fire & Marine Underwriters, Inc., 196 So.2d 592 (La.App. 1 Cir. 1967); Roux v. Brickett, 149 So.2d 456 (La.App. 3d Cir. 1963)."

See also Wallace v. Pan American Fire & Cas. Co., 352 So.2d 1048 (La.App. 3rd Cir. 1977), writ denied, 354 So.2d 209 (La.1978).
Appellant is not the tortfeasor in the instant suit. Therefore, the question arises as to whether the collateral source rule has any applicability as to a UM carrier. A review of the statutory provisions relating to UM coverage prompts us to conclude that it does. According to LSA-R.S. 22:1406(D)(1)(a) UM policy coverage is "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom . . .". It is clearly evident from the above statutory language that if the UM policy insured is "legally entitled to recover damages" under circumstances where the collateral source rule applies to preclude the tortfeasor a reduction of damages because of payments through insurance or employee benefits from other sources independent of the tortfeasor's procuration or contribution, then it is only logical that the UM carrier should likewise be prohibited from seeking a reduction of the tortfeasor's liability for damages because of payments from collateral sources when the insurer is litigating its UM exposure under a policy. The immediate issue at trial was the amount of time lost from work due to the injuries sustained in the accident which translates into damages plaintiff is legally entitled to recover from Clark. Plaintiff is clearly entitled to recover the loss of wages attributable to such lost time even though plaintiff has been compensated by employment benefits. The rationale is that plaintiff's forced use of these leave benefits precludes its future use and prejudices whatever credits might have inured to plaintiff's benefit upon retirement because of its accumulation. See Teal v. Allstate, 348 So.2d 83 (La.App. 4th Cir. 1977), writ denied, 351 So.2d 164; and Dunlap v. Armendariz, 265 So.2d 353, 354 (La. App. 4th Cir. 1972).
The collateral source rule, while not technically an exclusionary rule of evidence, made the existence of sick leave and annual leave benefits irrelevant in the determination of the amount of time lost from work for which plaintiff is legally entitled to recover damages from Clark. We conclude that since the existence of leave benefits is irrelevant in fixing the liability of the underinsured motorist, such evidence is likewise irrelevant when sought to be introduced by the UM carrier. The trial court did not err in excluding said evidence.
Appellant further contends the trial court erred in refusing to permit it to present to the jury the net amount of pay, after taxes, received by plaintiff from his employment. The trial court ruled that loss of income is measured by gross income as opposed to net income and that evidence as to the latter would not be admitted. Although appellant refers us to the Fourth Circuit decision of Teal v. Allstate, supra, wherein net income was used to calculate loss of wages, the rule in this circuit is to use gross salary, wages, or earnings in these *32 calculations. See Duplechin v. Pittsburgh Plate Glass Company, 265 So.2d 787 (La. App. 3rd Cir. 1972) and Menard v. Travelers Insurance Company, 240 So.2d 390 (La.App. 3rd Cir. 1970). In this regard the trial court made no error.

II.
Appellant next contends the trial court erred in directing verdicts in favor of the third party defendants, Steimal and Coca Cola. Further, appellant asserts error in the trial court directing a verdict in favor of plaintiff and in instructing the jury that the sole cause of the accident was the negligence of Clark. The trial judge passed over the exceptions filed by Coca Cola and Steimal and granted a directed verdict in favor of Coca Cola and Steimal on the basis that the evidence overwhelmingly exculpated Steimal from fault and that his acts, or those of Coca Cola, were in no way a contributing factor to the accident. The trial court then directed a verdict in favor of plaintiff holding that, on the basis of the evidence, the sole cause of the accident was the negligence of Clark.
The gravamen of appellant's argument is that, because reasonable men in evaluating the evidence adduced at trial could arrive at a contrary verdict, the issue of the liability of Coca Cola and Steimal should have been submitted to the jury for their determination.
We need not answer appellant's contention as we conclude that the trial court should have sustained Coca Cola's exception of no cause of action and dismissed the third party demand against it. Likewise, the third party demand against Steimal should have been dismissed for no cause of action on the trial court's own motion for the following reasons:
The right to reimbursement of a UM carrier is the subject of LSA-R.S. 22:1406(D)(4), which provides as follows:
"In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer."
In Niemann v. Travelers Ins. Co., supra, our Supreme Court interpreted the above cited provisions as follows:
"On the basis alone of statutory interpretation, we find that the UM insurer has no right under R.S. 22:1406D(4) other than the right to reimbursement from such proceeds, if any, that the insured in fact recovers from the underinsured tortfeasor.
* * * * * *
. . . If the UM carrier is to be afforded a right to subrogation or any other right more meaningful than that granted by R.S. 22:1406D(4), the statute will have to be amended by the Legislature."

In Bond v. Commercial Union Assurance Companies, 387 So.2d 617 (La.App. 3rd Cir. 1980), we discussed LSA-R.S. 22:1406(D)(4) in light of the Niemann decision:

"Although the court in Niemann was concerned with protecting an insured's right to settle with the tort-feasor and the tort-feasor's liability insured (sic) without interference from the uninsured motorist insurer, the language used by the court forecloses a more liberal interpretation of the statute which might allow the uninsured motorist insurer subrogation rights against the tort-feasor. The Supreme Court pointedly and emphatically pronounced that 22:1406D(4) imparts to the uninsured motorist insurer no subrogation rights. The only rights which the uninsured motorist insurer does have is the right to reimbursement from the insured and not from the tort-feasor. Although we recognize (and the Supreme Court probably recognized also) that such a restrictive interpretation of 1406D(4) *33 may often inure to the benefit of the tort-feasor, a result arguably unintended by the Legislature, we feel compelled to follow the Supreme Court decision."

In light of the aforestated principles we sustain the exception of no cause of action filed by Coca Cola, and as to Steimal, who did not except on the basis of no cause of action, we hold on our own motion, by authority of LSA-C.C.P. Article 927, that State Farm does not have a cause of action to pursue a third party claim against said alleged tortfeasor or his insurer.
The appellant's objection to the trial judge directing a verdict in favor of plaintiff and instructing the jury as to Clark's negligence and that he was the sole cause of the accident is without merit.
At the outset we observe that able counsel for appellant did not object at the trial level to the procedural propriety of the trial court's action in directing a "partial" directed verdict, i. e., on the issue of liability only, nor does he make this an issue on appeal. For this reason we express no opinion concerning whether the rendition of a "partial" directed verdict is allowed under the provisions of LSA-C.C.P. Article 1810.
As aforestated appellant asserts that the trial court erred in directing a verdict on the issue of liability on the sole ground that reasonable men, in evaluating the evidence adduced, could arrive at a conclusion different from that reached by the trial judge. Our careful examination of the record reflects no error in the trial court's conclusion that Clark's negligence was the sole cause of the accident. Additionally, State Farm did not deny that Clark was at fault or his negligence the cause of the accident. The trial court did not err or prejudice appellant's rights in this appeal.

III.
State Farm further contends that the trial judge erred in giving instructions to the jury as to the applicable law of the case. The trial judge gave the jury a lengthy charge and, on balance, we feel that the instructions generally encompass the applicable law to all of the issues including notice, insurer prejudice, and policy coverage. Despite the general adequacy of the charge of the jury, we note that the trial court failed to instruct the jury as requested by appellant that a policy of insurance is a contract between the insured and the insurer, and as such has the effect of law on the parties. The effect of this omission is compounded by the trial judge's erroneous charge that the law recognizes "the fact that the average citizen who purchases a public liability policy seldom, if ever, becomes familiar with its detailed provisions but simply puts it away until the day a claim arises" and by a subsequent unrequested charge concerning the law regarding ambiguous provisions in insurance contracts. Although no party raised the issue, the trial judge felt that that part of the insurance contract concerning notice requirements, particularly the phrase "as soon as practicable", was ambiguous and that therefore instructions to the jury regarding the effect of ambiguous provisions were warranted. The trial court's latter conclusion as to ambiguity of the notice provisions of the policy is contrary to the holding of our Supreme Court in LeBlanc v. Davis, 223 So.2d 862 (La.1969) wherein identical notice provisions were held to be reasonable and to be given effect. We feel that the erroneous instructions by the trial judge, although harmless as concerns the issue of quantum, may have had a detrimental and prejudicial impact on the jurors in their determination of the issue as to the reasonableness of State Farm's refusal to pay under the UM coverage of the policy.
The record shows that the first written notice of the accident or notice that any claim would be made under the policy was not given to State Farm until January 31,1979, almost one year following the date of the accident and approximately a week before the suit was filed. On the basis of late notice State Farm asserted that there was no coverage under the policy. Not only was the issue of lack of coverage under the policy due to late notice seriously litigated by State Farm, which if proven would have been a valid defense to plaintiff's claim, but *34 there were also the issues of Clark's underinsured status and the quantum of damages to be decided. With regard to the latter issue, plaintiff had a long history of back-related accidents and injuries which State Farm reasonably could argue were the basis of plaintiff's problems and that any conditions or illnesses suffered by plaintiff were pre-existing and not caused or aggravated by the accident which occurred February 9, 1978. Additionally, when presented with medical claims arising from the accident in the amount of $318.09 by plaintiff, State Farm timely paid these bills under the medical provisions of the policy. From the totality of the factual circumstances as set forth in the record and in light of the trial judge's errors in the jury instructions, we find that the determination that State Farm was arbitrary and capricious in refusing to pay the UM coverage policy limits is manifestly erroneous. We conclude that State Farm acted reasonably in contesting its liability under the policy for the reasons state above. We therefore reverse the trial court's award of penalties and attorney's fees under LSA-R.S. 22:658.

IV.
State Farm's final contention of trial court error is that the award of damages to plaintiff for his injuries and losses were excessive. In this regard appellant argues the special interrogatories submitted to the jury were prejudicial and duplicative in the manner in which the elements of general damage were itemized. That portion of the special interrogatories to which appellant objects and the amounts awarded by the jury are as follows:
". . .
3. We the jury find that damages sustained by plaintiff as a result of the accident of February 9, 1978 are as follows:

A. Medical expenses:
 (1) Past $2500.00
 (2) Future $7500.00
B. Loss of income:
 (1) Past $5500.00
 (2) Future $8000.00
C. Pain and suffering:
 (1) Past $5,000.00
 (2) Future $5,000.00
D. Mental anguish, anxiety, humiliation
 and embarrassment:
 (1) Past $3000.00
 (2) Future $3500.00
E. Physical Disability:
 (1) Past $5,000.00
 (2) Future $5,000.00
 TOTAL $50,000.00"

Appellant's argument that the itemized elements of general damage, listed above in parts C, D, and E, overlap and are duplicative to a degree has some merit. However, when viewed totally, i. e., that the award for general damages totals $26,500.00, we conclude that no prejudice or error was made in fixing the quantum of damages. The record shows that as a result of the accident plaintiff sustained an injury which aggravated a pre-existing condition of cervical spondylosis for which plaintiff has experienced, and will continue to experience much pain, disability and medical and hospital expenses. Our review of the award for general damages in light of the facts set forth in the record concerning the extent of plaintiff's injuries and the principles and methodology governing appellate review of quantum awards as set forth in LSA-C.C. Article 1934(3); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); and, the recent decision of Reck v. Stevens, 373 So.2d 498 (La.1979); convince us that the award is clearly not excessive.

V.
In light of our determination that attorney's fees are not awardable under LSA-R.S. 22:658 we need not consider plaintiff's answer seeking an increase in attorney's fees. Plaintiff's contention that State Farm should not be allowed a credit for previous payments by State Farm and by Clark and Southeastern is without merit. The UM insurer is entitled to credit for special damages paid to the insured prior to trial and also a reimbursement or credit for *35 the proceeds of any settlement recovered by the insured arising out of the covered accident. LSA-R.S. 22:1406(D)(4), supra; see also Launey v. Thomas, 379 So.2d 27 (La. App. 3rd Cir. 1979).
For the above and foregoing reasons that part of the trial court judgment appealed from awarding penalties and attorney's fees is reversed and plaintiff's demand for same is dismissed. In all other respects the judgment appealed from is hereby affirmed. Cost of this appeal are to be paid by appellant.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] Appellant contends the trial court erred (1) when it allowed the introduction of an auto repair bill, however, said bill was admitted into evidence without objection; (2) appellant contends the trial court erred in prohibiting it from questioning appellant's claims superintendent as to the manner in which the company was prejudiced by failure of notice, however, the court only sustained an objection to a particular question which the claims superintendent began to answer in opinion form, thereafter, counsel for State Farm simply did not pursue this line of questioning and cannot now say he was "prohibited" from doing so by the trial court; and (3) defendant contends plaintiff should not have been allowed to call Clark as a witness under the rule, i. e., LSA-C.C.P. Article 1634, as Clark was not "truly" adverse because after his testimony the compromise and settlement was made and Clark was dismissed from the suit. The fact that Clark was subsequently dismissed because of a settlement does not change the fact that at the time Clark was called to the stand, he was a named defendant in the suit and therefore an adverse party pursuant to LSA-C.C.P. Article 1634. We also note that appellant's contention that the trial judge made prejudicial remarks before the jury when ruling on objections is not supported by the record or reflected in the result.